IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02604-GPG-KAS

JEROME SISNEROS,

    Plaintiff,

v.

ANDRE STANCIL, Executive Director, CDOC,
AUDET, Major, Programs Major, CSP,
DALTON, Capt., CSP Food Service, and
SCHNEIDER, Lt., CSP Food Service,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendants' **Motion to Dismiss Plaintiff's Complaint at ECF No. 1** [#13][1] (the "Motion"). Plaintiff filed a Response [#16] in opposition to the Motion [#13], and Defendants filed a Reply [#17]. The Motion [#13] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See* [#24]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS** that the Motion [#13] be **GRANTED in part** and **DENIED in part**.

---

[1] "[#13]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

## I. Background[2]

Plaintiff proceeds in this matter as a pro se litigant.[3] At all times relevant to this litigation, he was incarcerated at the Colorado State Penitentiary ("CSP"). *See Compl.* [#1] at 5[4]. Since May of 2022, he has been assigned to the P.M. food service crew. *Id.* He alleges that, at the end of every P.M. shift, the food service staff creates a list of at least three inmates, purportedly selected at random, to be strip searched. *Id.* Plaintiff states that no reason exists for conducting the strip searches because (1) tools, food, and other items are already accounted for prior to releasing the inmates, and (2) each inmate is pat-searched and must clear a metal detector before being allowed to return to his living unit. *Id.*

Plaintiff asserts that the strip searches are "degrading, dehumanizing and designed to remind each inmate who is in charge." *Id.* He alleges that the searches "serve no legitimate penological purpose and are only done to food service workers at the Colorado State Penitentiary[.]" *Id.* He further states that, "while there are inmate workers

---

[2] To resolve the Motion [#13], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's Complaint [#1]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, to the extent that Plaintiff provides additional allegations or possible new claims in his briefs, the Court notes that a party may not amend his complaint in motion briefing. *See, e.g.*, *Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1127 (D. Kan. 2021) (stating that "a party may not amend its complaint by way of arguments in a brief"); *Wilson v. Johnson*, No. 19-cv-2279-CMA-NRN, 2020 WL 5815915, at *5 (D. Colo. Sept. 30, 2020) (stating that it is "well established that Plaintiff may not amend his Complaint by adding factual allegations in response to Defendants' Motion to Dismiss").

[3] The Court must liberally construe the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[4] Citations to page numbers refer to the numbering used by the Court's docketing system.

who regularly handle class A tools and go into restricted areas of the facility, none of these workers are ever strip searched." *Id.* He also states that "no other group of inmates at C.S.P. who are workers, are strip searched, including A.M. food service workers." *Id.*

Plaintiff emphasizes that he understands that convicted felons have only a limited right to privacy and that there are instances where strip searches are justified. *Id.* However, he believes that the policy of only strip searching P.M. food service workers at CSP, when this is not done elsewhere, and in the absence of a "legitimate belief the inmate has contraband of some form," is "a form of harassment" designed "to remind the P.M. food service workers at C.S.P. who is in charge." *Id.*

Plaintiff's claims are asserted under the Eighth Amendment Cruel and Unusual Punishment Clause and Fourteenth Amendment Due Process Clause. *Id.* Plaintiff seeks a permanent injunction requiring Defendants and all Colorado Department of Corrections (CDOC) officials "to cease and desist from conducting random strip searches of C.S.P.'s P.M. inmate food service workers unless there are grounds to believe that it is necessary and to treat [P.M. food service workers] the same as all other food service workers, i.e. those housed at other facilities." *Id.* at 9. He does not seek any monetary damages, beyond the costs of this action. *Id.* In the present Motion [#13], Defendants seek dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Standard of Review

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A

3

complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III. Analysis

Plaintiff asserts that the CSP policy that authorizes Defendants to randomly strip search inmate workers is "not valid" because Defendants failed to follow the protocol for implementation of new policies, as outlined by the CDOC Administrative Regulations (the "ARs"). *Compl.* [#1] at 6. Plaintiff avers that, by failing to follow the ARs, Defendants "violated his procedural due process and/or substantive due process protections."

4

*Response* [#16] at 9 (citations omitted).[5] Plaintiff further argues that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by subjecting him to random strip searches that "are performed only as a means of vexing, harassing, intimidating, and reminding each prisoner who is in control." *Compl.* [#1] at 5. Defendants argue that Plaintiff's claims should be dismissed "because (1) [Plaintiff]'s allegations are insufficient to state a claim under the Eighth and Fourteenth Amendments; and (2) the relief [Plaintiff] seeks contradicts limitations imposed by the Prison Litigation Reform Act ('PLRA') and the Federal Rules of Civil Procedure." *Motion* [#13] at 3.

A.      **Fourteenth Amendment[6]: Due Process**

Plaintiff alleges that Defendants failed to "seek a 'variance' from the [CDOC] Headquarters," as required by AR 100-01(IV)(H)(3), before implementing the CSP policy that allows random strip searches of inmate workers. *Compl.* [#1] at 6. Plaintiff avers that "this failure violated his procedural due process and/or substantive due process protections." *Response* [#16] at 9 (citations omitted). Defendants argue that, because "all offenders may be strip searched at any time, . . . no variance was needed to authorize random searches of workers." *Reply* [#17] at 9. Defendants further aver that Plaintiff's "due process claim is coextensive with [his] Eighth Amendment claim" and, therefore, that

---

[5] The Court occasionally refers to Plaintiff's Response [#16] to the Motion [#13] to clarify his legal arguments. *See Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989) ("Response pleadings . . . may be necessary for a *pro se* plaintiff to clarify his legal theories.").

[6] Defendants construed Plaintiff's Fourteenth Amendment claim as one for an Equal Protection violation. *See Motion* [#13] at 8-11. However, Plaintiff expressly and unequivocally disavowed any such claim. *See Response* [#16] at 9 ("With all due respect to counsels, Mr. Sisneros did not state an equal protection claim."). Therefore, the Court does not consider whether Plaintiff's allegations state a plausible claim for relief under the Equal Protection Clause. *Response* [#16] at 9.

"[i]t is not necessary to apply [a] due process analysis[.]" *Id.* (citing *Thompson v. Milyard*, No. 07-cv-02132-WYD-CBS, 2008 WL 4097531, at *4 (D. Colo. Sept. 2, 2008)).

"The Fourteenth Amendment prohibits a state from 'depriv[ing] any person of life, liberty, or property, without due process of law.'" *Seegmiller v. LaVerkin City*, 528 F.3d 762, 766 (10th Cir. 2008) (quoting U.S. Const. amend. XIV, § 1). "Although their due process rights are defined more narrowly, that guarantee applies to prisoners as well." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). For inmates, "[t]he process due . . . under the United States Constitution is measured by the Due Process Clause, not prison regulations." *Brown v. Wyo. Dep't Corr. State Penitentiary Warden*, 234 F. App'x 874, 878 (10th Cir. 2007) (citations omitted). This is because "[p]rison regulations are 'primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates[.]'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995)). Therefore, a correctional officer's failure to follow prison regulations "is actionable only if the [correctional officer]'s actions fail to meet basic federal constitutional standards." *Rector v. City & County of Denver*, 348 F.3d 935, 947 (10th Cir. 2003).

Procedural due process guarantees that an inmate will receive "due process before he is subjected to conditions that 'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[.]'" *Wilson*, 430 F.3d at 1117 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[T]he central meaning of procedural due process [is] . . . clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quotation marks and citations omitted). "To prevail on

6

a procedural due process claim, a litigant must show [that] (1) the [Defendant] deprived him of a protected interest in liberty or property and (2) he was not 'afforded an appropriate level of process[.]'" *Leek v. Miller*, 698 F. App'x 922, 927 (10th Cir. 2017) (quoting *Washington v. Unified Gov't of Wyandotte Cnty., Kan.*, 847 F.3d 1192, 1201 (10th Cir. 2017)).

"In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective." *Seegmiller*, 528 F.3d at 767 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846-46 (1998)). However, if another Constitutional "Amendment provides an explicit textual source of constitutional protection against th[e] sort of . . . intrusive governmental conduct [alleged], that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing th[o]se claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

The Court may take judicial notice of the at-issue CDOC regulations, AR 100-01 (Administrative Regulation Process) and AR 300-06[7] (Searches and Contraband Control) because both are referenced in the Complaint and central to Plaintiff's claims, *see* [#1] at 6, and both are agency regulations. *See Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) (regarding matters referenced in complaint and central to claims); *Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (regarding agency rules and regulations). The Court notes that AR 100-01(IV)(H)(3), which Plaintiff claims Defendants violated, does not relate to Plaintiff's right to receive fundamental procedural due process

---

[7] AR 100-01 is available on the CDOC's website. *See* http://cdoc.colorado.gov (choose "Department Policies" from "About" dropdown; then choose "100" dropdown; then choose "100-01"). AR 300-06 is attached to Defendants' Motion to Dismiss [#13] as Exhibit A [#13-1].

protections, such as notice and the opportunity to be heard. Rather, the AR merely outlines the protocol that CDOC facilities must follow when implementing new policies. Specifically, the AR states, "If a facility must deviate from the general processes defined in the governing AR or must significantly modify the processes in the AR a variance request must be submitted." AR 100-01(IV)(H)(3) (emphasis omitted). Therefore, because prison "regulations themselves do not create an enforceable procedural right," *Est. of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1341 (10th Cir. 2007), the Court does not find that "Defendants['] fail[ure] to follow their own rules . . . violated [Plaintiff's] procedural due process" rights. *Response* [#16] at 9; *cf. Brown*, 234 F. App'x at 878 ("[N]o reasonable jurist could conclude that [plaintiff]'s claim that prison officials deprived him of due process by violating internal regulations rises to the level of a due process violation.").

The Court further finds that Plaintiff's claim fails to the extent it rests on a theory that the alleged due process "violation . . . caused his Eighth Amendment protections to be violated by subjecting him to visual body cavity searches[.]" *Response* [#16] at 11. Plaintiff's claim is properly analyzed under the Eighth Amendment. *See Thompson*, 2008 WL 4097531, at *4 ("[B]ecause Plaintiff's claims can be properly analyzed under the . . . Eighth Amendment[ ], it is unnecessary to apply a substantive due process analysis to Plaintiff's claims.").

Accordingly, the Court **recommends** that the Motion [#13] be **granted in part** as to Plaintiff's procedural due process claim, and that this claim be **dismissed without prejudice**. *See, e.g.*, *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (stating that "pro se parties generally should be given leave to amend"). The Court

further **recommends** that the Motion [#13] be **granted in part** as to Plaintiff's substantive due process claim, and that this claim be **dismissed with prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

**B.    Eighth Amendment: Cruel and Unusual Punishment**

Plaintiff avers that Defendants violated his Eighth Amendment rights by subjecting him to random strip searches that "are degrading, dehumanizing, and designed to remind each inmate who is in charge." *Compl.* [#1] at 5. Defendants argue that Plaintiff's Eighth Amendment claim should be dismissed because Plaintiff "fails to state facts that plausibly show that the CSP food service staff acted with the intent to harass or cause psychological pain[.]" *Motion* [#13] at 5.

"The Eighth Amendment protects 'the basic concept of human dignity' and forbids punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Denson v. Rios*, No. 19-cv-00233-CMA-STV, 2019 WL 7878594, at *6-*7 (D. Colo. Sept. 27, 2019) (recommending dismissal of Eighth Amendment claim arising from strip searches the plaintiff contended were degrading and embarrassing rather than conducted in abusive fashion or with unnecessary force), *report and recommendation adopted*, No. 19-cv-00233-CMA-STV, 2019 WL 7161695 (D. Colo. Dec. 23, 2019) (quoting *Gregg v. Georgia*, 428 U.S. 153, 182-83 (1976)). "The Eighth Amendment prohibits not only barbarous physical punishment, but also the unnecessary and wanton infliction of psychological pain." *Denson*, 2019 WL 7878594, at *6 (citing *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001)). "To be cruel and unusual

punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

To constitute an Eighth Amendment violation, a strip search must be conducted "in an abusive fashion or with unnecessary force." *Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986). Emotional distress, humiliation, and embarrassment from a strip search do not, by themselves, support a constitutional claim. *See Smith v. Corr. Corp. of Am. Torrance Cnty.*, No. cv 16-01201 MCA/GJF, 2018 WL 550592, at *4 (D.N.M. Jan. 23, 2018).

Here, Plaintiff simply asserts that the "the[ ] strip searches are degrading, [and] dehumanizing[.]" *Compl.* [#1] at 5. Without more, the Court does not find that Plaintiff has plausibly alleged that Defendants violated his Eighth Amendment rights by subjecting him to random strip searches. *See Levoy*, 788 F.2d at 1439-40.

Accordingly, the Court **recommends** that the Motion [#13] be **granted in part** as to Plaintiff's Eighth Amendment claim, and that this claim be **dismissed without prejudice**. *See, e.g., Knight*, 749 F.3d at 1190.

C.     **Fourth Amendment: Unreasonable Strip Search**[8]

Plaintiff asserts that Defendants' strip searches of P.M. food service workers "serve no legitimate penological purpose" because (1) "each inmate is pat searched and must clear a metal detector prior to . . . return[ing] to their living unit"; (2) "all tools, food, etc., have been accounted for"; and (3) other inmate workers are not strip searched, "including A.M. food service workers." *Compl.* [#1] at 5. Plaintiff further alleges that the strip searches are conducted "as a form of harassment and to remind the P.M. food service workers at C.S.P. who is in charge." *Id.* Defendants aver that "[e]nsuring that prison staff maintains authority over inmates so that they can impose order is not an illegitimate penological purpose." *Motion* [#13] at 8 (citing *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). Defendants further argue that "[r]andom strip searches of workers before they return to the general population are constitutionally permissible in prison settings, especially when inmates are working in a setting where they routinely interact with contraband." *Motion* [#13] at 8 (citations omitted).

If a strip search is reasonably related to a legitimate penological interest, it does not violate the Fourth Amendment, even if conducted on less than probable cause. *See Bell*, 441 U.S. at 558-60; *see also Denson*, 2019 WL 7878594, at *4. To evaluate a

---

[8] While Plaintiff does not explicitly assert that Defendants violated his Fourth Amendment right to be free from unreasonable searches, that appears to be his intent. *See Response* [#16] at 5 (citing *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002) (deciding whether strip search violated prisoner's Fourth Amendment rights); *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982) (same)). Given the liberal pleading standards for pro se litigants, and that a strip search of an inmate may implicate both the Fourth Amendment and Eighth Amendment, the Court analyzes whether Plaintiff plausibly alleges that Defendants violated his Fourth Amendment rights. *McCoy v. Heimgartner*, No. 17-3139-JWB, 2019 WL 121117, at *5 (D. Kan. Jan. 7, 2019) (citing *Harris v. Rocchio*, No. 97-1020, 1997 WL 787185, at *2 (10th Cir. 1997)); *see Hall*, 935 F.2d at 1110 ("[I]f the court can reasonably read [a pro se litigant's] pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's . . . confusion of various legal theories[.]").

11

search's reasonableness and balance a prison's significant, legitimate security interests against an inmate's privacy interests, a court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559, 560.

### 1.     Place in Which the Search is Conducted

Plaintiff does not allege where the strip searches are conducted, or whether the setting of the strip searches is unreasonable. Therefore, the Court does not consider this factor any further. *See Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("Although [the Court] must liberally construe plaintiff's factual allegations . . . [it] will not supply additional facts[.]") (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Neitzke v. Williams*, 490 U.S. 319, 331 n.9 (1989)).

### 2.     Manner in Which the Search is Conducted

To the extent that Plaintiff's Fourth Amendment claim arises from the "random" selection of inmates for a strip search, *see Compl.* [#1] at 5, the Court finds that Plaintiff fails to state a plausible claim. Inmates have a limited expectation of privacy and, thus, courts have upheld prison officials' right to conduct strip searches at random. *Tiger v. Cowley*, No. 92-6332, 1993 WL 53603, at *3 (10th Cir. Feb. 22, 1993). "Moreover, because a penal institution 'is a unique place fraught with serious security dangers' where the '[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence,' visual body-cavity searches may be conducted without probable cause." *Goodwin v. Mapes*, No. 11-cv-00336-CMA-KMT, 2011 WL 5984710, at *4 (D. Colo. Aug. 24, 2011) (quoting *Bell*, 441 U.S. at 559-60) (modification in original). Therefore, the Court finds that randomly conducting strip searches is reasonably necessary to protect CSP's

12

security interests. *See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012) (reiterating that "deterring the possession of contraband depends in part on the ability to conduct searches without predictable exceptions").

### 3. Scope of the Intrusion and Justification for Initiating the Search

Undoubtedly, strip searches are a significant invasion of privacy rights. *See Whitehead v. Marcantel*, 766 F. App'x 691, 700 (10th Cir. 2019). Because the scope of intrusion is great, so must be Defendants' justification for conducting the strip searches. *See Levoy*, 788 F.2d at 1439 ("It is an established Fourth Amendment principle that 'the greater the intrusion, the greater must be the reason for conducting a search.'") (quoting *Blackburn v. Snow*, 771 F.2d 556, 565 (1st Cir. 1985)).

When ruling on a motion to dismiss, "the court need only assess, as a general matter, whether the conduct at issue was reasonably related to a legitimate penological interest"; however, a plaintiff need not "identify every potential legitimate interest and plead against it." *Shapiro v. Falk*, No. 13-cv-3086-WJM-KMT, 2014 WL 4651952, at *8 (D. Colo. Sept. 18, 2014) (citing *Al-Owhali v Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012)).

Plaintiff acknowledges "that being a convicted felon he only has a limited right to privacy and that if there is justification, he may be subjected to being strip searched[.]" *Compl.* [#1] at 5. However, he questions the need for such an intrusive search when other forms of search are available and utilized, where other inmate workers with access to dangerous tools are allegedly not strip searched at the end of their shifts, and "despite the fact that all tools, food, etc., have been accounted for[.]" *Id*.

13

While the Court acknowledges the significant, legitimate penological interest in preventing theft and misappropriation of dangerous tools from the prison kitchen,[9] the Court finds that Plaintiff has plausibly alleged that "only strip searching P.M. food service workers at C.S.P."—when "A.M. food service workers" at CSP or other groups of inmate workers at C.S.P. "who regularly handle class A tools" are not strip searched—was not supported by a legitimate penological interest. *See id.*; *cf. Shapiro*, 2014 WL 4651952, at *8 (finding that the plaintiff plausibly alleged that the group strip searches to which he was subjected were not supported by legitimate penological interest, even though the court assumed without deciding that prison officials "had a legitimate penological interest in conducting strip searches of inmates leaving the facility for court appearances"). Indeed, if the alternatives, *e.g.*, metal detectors and a body scanner, cited by Plaintiff, *see Compl.* [#1] at 5, 7, "could have fully accommodated Plaintiff's rights at a *de minimus* cost to valid penological interests, then the [strip searches of P.M. food service workers] may have constituted an 'exaggerated response' to security needs." *Shapiro*, 2014 WL 4651952, at *8 (citing *Turner v. Safley*, 482 U.S. 78, 90 (1987))[10].

---

[9] *See Khan v. Barela*, 808 F. App'x 602, 612 (10th Cir. 2020) (stating that prisons have a "legitimate penological interest in discovering contraband").

[10] In *Turner*, the Supreme Court identified four factors for determining a prison regulation's reasonableness: (1) whether a "valid, rational connection" exists between the regulation and the asserted legitimate governmental interest; (2) whether alternative means exist for inmates to exercise the asserted right; (3) the impact accommodation of the asserted right will have on guards, inmates, and the allocation of prison resources; and (4) whether "ready alternatives" exist. 482 U.S. at 89-91. When considering a prison regulation's reasonableness on a motion for summary judgment, a court must consider these four factors. *See Reinhardt v. Kopcow*, 66 F. Supp. 3d 1348, 1357-58 (D. Colo. 2014). However, on a motion to dismiss, a court need only consider whether, as a general matter, the regulation is reasonably related to a legitimate penological interest. *Id.* Thus, "to state a cognizable claim, [a plaintiff] must plead facts from which a plausible inference can be drawn that" no reasonable relationship to a legitimate penological interest existed. *Id.* (citing *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010)).

In balancing the *Bell* factors, the Court finds that, while Defendants may conduct random strip searches of inmates without probable cause, Plaintiff plausibly alleges a Fourth Amendment violation stemming from the Defendants' purported application of the random strip search policy only to P.M. food service workers. *See Khan*, 808 F. App'x at 612 (finding viable claim arising from strip searches of inmates returning from medical appointments and court appearances but not of inmates being booked and rebooked into the facility). Accordingly, the Court **recommends** that the Motion [#13] be **denied in part** with respect to Plaintiff's Fourth Amendment claim.

**D.     Prospective Relief**

Plaintiff requests a permanent injunction that (1) enjoins all CDOC officials from conducting random strip searches without reasonable belief "that it is necessary," and (2) requires all CDOC officials to "treat [P.M. food service workers] the same as all other food service workers," including "those housed at other facilities." *Compl.* [#1] at 9. Defendants argue that Plaintiff's requested relief violates the PLRA and Fed. R. Civ. P. 65 "because the relief requested is not narrowly tailored, and the proposed injunction contains abstract terms that are not readily enforceable." *Motion* [#13] at 11.

The PLRA "limits . . . the power of courts to give injunctive relief to prisoners, requiring . . . that any injunctive relief granted be both narrowly drawn to correct the violation of federal rights and also the least intrusive means of correcting the violation." *Biodiversity Assocs. v. Cables*, 357 F.3d 1152, 1167 (10th Cir. 2004) (citing 18 U.S.C. § 3626(a)(1)(A)). "The purpose of the PLRA is to 'eliminate unwarranted federal-court interference with the administration of prisons.'" *Smith v. Crockett*, No. 20-cv-00841-WJM-MEH, 2022 WL 3225119, at *3 (D. Colo. Aug. 10, 2022) (quoting *Woodford v. Ngo*,

15

548 U.S. 81, 93 (2006)). Thus, in determining whether prospective relief complies with the PLRA, "[t]he court shall give substantial weight to any adverse impact on . . . the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1)(A).

Because Defendants may constitutionally conduct random strip searches of inmate workers without probable cause, *see, e.g., Bell*, 441 U.S. at 558-60, the PLRA prohibits Plaintiff's request for a permanent injunction that enjoins Defendants from conducting strip searches without reasonable belief "that it is necessary." *Compl.* [#1] at 9; *see* 18 U.S.C. § 3626(a)(1)(A) (stating that prospective relief must "extend[ ] no further than necessary to correct the *violation* of the Federal right") (emphasis added).

Additionally, the Court finds that Plaintiff's request for a permanent injunction requiring "the named defendants, as well as all C.D.O.C. officials . . . to treat [P.M. food service workers] the same as all other food service workers" does not comply with the PLRA and Fed. R. Civ. P. 65. *Compl.* [#1] at 9. The Court agrees with Defendants that Plaintiff must specify "what level of sameness is required" to comply with the prospective relief. *Motion* [#13] at 14; *see Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 895 F.2d 659, 668 (10th Cir. 1990) ("[A]n injunction [must] be reasonably specific in identifying what acts are prohibited or required[.]") (citations omitted). The Court further finds that, because Plaintiff does not allege that officials at other CDOC facilities selectively enforce the strip search policy, Plaintiff's request to enjoin all CDOC officials "extends . . . further than necessary to correct" the alleged violation of Plaintiff's Fourth Amendment rights. 18 U.S.C. § 3626(a)(1)(A); *see Hospice of N.M., LLC v. Sebelius*, 691 F. Supp. 2d 1275, 1294-95 (D.N.M. 2010) ("[I]njunctive relief should be carefully addressed to the circumstances of

16

the case and not any broader than necessary to afford relief to the prevailing party.") (citation and internal quotation marks omitted).

While Plaintiff's requested relief is overly broad, the Court maintains its discretionary power to fashion appropriate injunctive relief as necessary. *See, e.g.*, *U.S. v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496 (2001) ("[W]hen district courts are properly acting as courts of equity, they have discretion [to fashion injunctive relief] unless a statute clearly provides otherwise."); *Thomas v. Bryant*, 614 F.3d 1288, 1323 n.33 (11th Cir. 2010) (stating that the court "had a duty to fashion appropriate injunctive relief, obviously with reference to the needs-narrowness-intrusiveness requirement" of the PLRA). Additionally, the limitations imposed by the PLRA appear to be guidelines for the Court to follow when granting injunctive relief, not grounds for dismissal before the Court has even found that any relief is necessary. *See* 18 U.S.C. § 3626(a)(1)(A) ("The court shall not *grant* or *approve* any prospective relief unless . . . such relief is narrowly drawn[.]") (emphasis added); *Simmons v. Williams*, No. 6:14-cv-111, 2017 WL 4162176, at *2 (S.D. Ga. Sept. 20, 2017) ("The PLRA . . . does not require that the Court dismiss any and all claims for injunctive relief at th[e] [motion to dismiss] stage. The Court may fashion appropriate relief at a later date, should Plaintiff ultimately prevail on his claims."). Therefore, while the Court notes that Plaintiff's requested relief does not comply with the PLRA and Fed. R. Civ. P. 65, the Court finds that Plaintiffs claims are not subject to dismissal at this time on this basis alone.

Accordingly, the Court **recommends** that the Motion [#13] be **denied in part** to the extent Defendants argue that the Complaint [#1] should be dismissed because Plaintiff's requested relief does not comply with the PLRA and Fed. R. Civ. P. 65.

17

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#13] be **GRANTED in part** and **DENIED in part**.[11]

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 29, 2024                    BY THE COURT:

                                          Kathryn A. Starnella
                                          United States Magistrate Judge

---

[11] If the Recommendation is adopted, then only Plaintiff's Fourth Amendment claim would remain.