IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02604-GPG-KAS

JEROME SISNEROS,

     Plaintiff,

v.

ANDRE STANCIL, Executive Director, CDOC,
AUDET, Major, Programs Major, CSP,
DALTON, Capt., CSP Food Service, and
SCHNEIDER, Lt., CSP Food Service,

     Defendants.
_____

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendants' **Rule 12(b)(1) Motion to Dismiss Plaintiff's Amended Complaint at ECF No. 37** [#56] (the "Motion"). Plaintiff, who proceeds in this matter as a pro se litigant,[1] filed a Response [#63] in opposition to the Motion [#56], and Defendants filed a Reply [#69]. The Motion [#56] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *Memorandum* [#57].

The Court also considers Plaintiff's **Request Under F.R.E. for This Court to Take Judicial Notice of Colorado Revised Statutes, Sections 17-103, 17-20-115 & 17-20-117** [#70] and Plaintiff's **Renewed Motion to Set Status/Scheduling Conference** [#67],

_____
[1] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

which have also been referred to the undersigned. *Memoranda* [#68, #71]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS** that the Motion [#56] be **DENIED**. The Court orders that Plaintiff's Request Under F.R.E. for This Court to Take Judicial Notice of Colorado Revised Statutes, Sections 17-103, 17-20-115 & 17-20-117 [#70] is **DENIED as moot**. And Plaintiff's Renewed Motion to Set Status/Scheduling Conference [#67] is **DENIED** as **premature**.

## I.    Background

At all times relevant to this litigation, Plaintiff Jerome Sisneros was incarcerated at the Colorado State Penitentiary ("CSP"). *Am. Compl.* [#37] at 5. Beginning May 2022, CSP assigned him to the P.M. food service crew. *Id.* Plaintiff alleges that at the end of every P.M. shift, food service staff compile a list of at least three inmates, purportedly selected at random, to undergo strip searches. *Id.*

Plaintiff asserts that the staff lack any legitimate reason for conducting these searches because (1) tools, food, and other items are already accounted for prior to releasing the inmates, and (2) each inmate must undergo a pat search and clear a metal detector before returning to his living unit. *Id.* He also claims that staff have access to less intrusive, readily available alternatives, including a full-body scanner and a "metal-detecting chair" located near the area where the strip searches occur. *Id.*

Plaintiff asserts that the strip searches are "a means of punishment and to remind inmate[s] who is in charge." *Id.* He alleges that, despite the list being allegedly selected randomly, food service workers select inmates they do not like or feel "[have not] either complied with that staff member's wishes or worked hard enough in that staff member's

view" for the search list. *Id*. He states that these strip searches are only conducted on P.M. food service workers and not on A.M. food service workers, even though "they are identically situated to the P.M. food service workers, but for the time period they work." *Id.* He further states that "no strip searches are conducted upon any other inmate workers at [CSP], even though some of those workers either have access to Class-A tools or have contact with the outside world." *Id.* at 5-6.

Plaintiff also explains that he and other inmate workers reside in the "Incentive Living Unit." *Id*. at 6. To be eligible for the program, inmates "must be infraction free and have a good work history evaluation." *Id*. Plaintiff argues that this status makes the strip searches unnecessary because the inmates being searched have a good history within the facility. *Id*.

Plaintiff emphasizes that he understands convicted felons have only limited privacy rights and that there are instances where strip searches are justified. *Id.* However, he believes that the policy of only strip-searching P.M. food service workers at CSP, when this is not done elsewhere and in the absence of a "suspicion that any inmate is carrying any form of contraband," is "extremely degrading and humiliating and done without any legitimate penological purpose." *Id.* Plaintiff contends these searches are a violation of Colorado Department of Corrections ("CDOC") official policy, which requires strip searches to be conducted only if there is "a reasonable belief that the offender is carrying contraband or other prohibited material." *Id*.

Plaintiff lodges a Fourth Amendment claim, as applied to the states by the Fourteenth Amendment, against Defendants in their official capacities. *Id.* He seeks a permanent injunction requiring Defendants and all CDOC officials to "cease conducting

random physical strip searches of PM Food Service workers absent reasonable belief that the inmate is carrying contraband." *Id.* at 9. Plaintiff additionally seeks injunctive relief requiring CSP to "utilize other readily available means" for conducting searches of food service workers and to prevent food service staff from determining the list of inmates who receive additional screening following their shifts. *Id*. He does not seek any monetary damages, beyond the costs of this action. *Id.* In the present Motion [#56], Defendants Andre Stancil, Major Audet, Capt. Dalton, and Lt. Schneider[2] seek dismissal of Plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II.    Standard of Review

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). In other words, "[a] Rule 12(b)(1) motion to dismiss only requires the court to determine whether it has authority to adjudicate the matter." *Kenney v. Helix TCS, Inc*., 939 F.3d 1106, 1108 (10th Cir. 2019). Because federal courts are tribunals of limited jurisdiction, the Court must establish a statutory basis to exercise jurisdiction. Fed. R. Civ. P. 12(b)(1); *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). The Court may only exercise jurisdiction "in the presence rather than the absence of statutory authority." *Castaneda v. I.N.S*., 23 F.3d 1576, 1580 (10th Cir. 1994) (quoting *Wyeth Lab'ys. v. U.S. Dist. Ct*., 851 F.2d 321, 324 (10th Cir. 1988)). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption

---

[2] According to the Amended Complaint, Defendant Stancil is the CDOC's Executive Director, Defendant Audet is CSP's Programs Major, and Defendants Dalton and Schneider are with CSP's Food Service. *Am. Compl.* [#37] at 1.

against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotations omitted).

"Rule 12(b)(1) challenges may take two different forms." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023). "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff*, 65 F.4th at 507. "When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court 'may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.'" *Id.* (quoting *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997)). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment[.]" *SK Fin. SA*, 126 F.3d at 1275. "In such instances, a court has discretion to consider affidavits and other documents to resolve the jurisdictional question." *Graff*, 65 F.4th at 507.

### III.    Analysis

Defendants argue Plaintiff's claims are now moot for two reasons: (1) Plaintiff transferred from the food services department to housekeeping on February 14, 2024, and (2) in early 2025, the CSP food services department stopped conducting strip searches at the end of every food service shift. *Motion* [#56] at 3, 6; *Decl. of Hunter* [#56-

1], ¶¶ 6-7, 11; *Decl. of Dalton* [#56-2], ¶¶ 4-5, 7.[3] Defendants contend that, as a result, Plaintiff's claims for injunctive relief no longer present a live case or controversy, and the Court therefore lacks subject matter jurisdiction. *Motion* [#56] at 3-7.

Mootness is a threshold jurisdictional issue "because the existence of a live case or controversy is a constitutional prerequisite[.]" *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005) (quoting *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996)); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (stating that federal courts "have no subject-matter jurisdiction if a case is moot"). "A case becomes moot when events occur which resolve the controversy underlying it." *Wilson v. Jenks*, No. 12-cv-02495-RM-KMT, 2014 WL 6510584, at *3 (D. Colo. Aug. 20, 2014) (citation omitted). "In such a situation, a federal court decision provides no resolution between the parties to the lawsuit and therefore, constitutes a constitutionally impermissible advisory opinion." *Id.* (citation omitted); *see also Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 882-83 (10th Cir. 2019) (deeming request for injunction to deliver eleven rejected publications moot because the Bureau of Prisons had already delivered them).

Defendants explain that CSP initially assigns all new incentive program inmates to work in the food services department but allows them to transfer to another department when a position becomes available. *Decl. of Hunter* [#56-1], ¶ 5. Consistent with this practice, Plaintiff worked in the food services department from May 25, 2022, through

_____

[3] Because Defendants' mootness argument is a "factual attack" on the Court's subject matter jurisdiction, the Court may consider the Hunter and Dalton Declarations without converting the Rule 12(b)(1) motion into a summary judgment motion. *Cf.*, *Graff*, 65 F.4th at 507 (stating that "[i]n such instances, a court has discretion to consider affidavits and other documents to resolve the jurisdictional question" without converting the motion to dismiss to a summary judgment motion).

February 14, 2024. *Decl. of Hunter* [#56-1], ¶ 6; *Decl. of Dalton* [#56-2], ¶ 4. On February 15, 2024, CSP assigned Plaintiff to the housekeeping department. *Decl. of Hunter* [#56-1], ¶ 7; *Decl. of Dalton* [#56-2], ¶ 5. Defendants contend that Plaintiff will work in the food services department again only if he requests a transfer. *Motion* [#56] at 6; *Decl. of Hunter* [#56-1], ¶¶ 7, 9; *Decl. of Dalton* [#56-2], ¶ 6. Defendants argue that Plaintiff's claim is moot because he no longer works in the food services department and, in any case, the department has stopped conducting strip searches. In his Response, Plaintiff invokes both the capable-of-repetition-yet-evading-review and the voluntary cessation exceptions to mootness. *Response* [#63] at 3–7.

### A.     Voluntary Cessation

The voluntary cessation exception prevents a defendant from automatically mooting a plaintiff's claim by ending its unlawful conduct after the plaintiff files suit. *Prison Legal News*, 944 F.3d at 880. "The exception 'exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resum[e] the illegal conduct.'" *Id.* at 880-81 (quoting *Ind v. Colo. Dep't of Corrs.*, 801 F.3d 1209, 1214 (10th Cir. 2015)).

To avoid application of the voluntary cessation exception, a defendant must carry "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 881 (quoting *Brown v. Buhman*, 822 F.3d 1151, 1168 (10th Cir. 2016)). A defendant cannot rely on "'a mere informal promise or assurance that the challenged practice will cease' or 'announce an intention to change." *Id.* (cleaned up) (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1118). Instead, the defendant must implement "'changes that are permanent in nature'

7

and 'foreclose a reasonable chance of recurrence of the challenged conduct.'" *Id.* (quoting *Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004)). Such changes may include formally withdrawing or altering administrative policies through a formal process. *Id.* (citing *Rio Grande Silvery Minnow*, 601 F.3d at 1117).

Defendants first explain that the food services department ceased conducting strip searches in early 2025, rather than in 2023, when Plaintiff initiated this action, or in 2024, when the Court permitted Plaintiff to "reframe his claims." *Reply* [#69] at 4. They contend this demonstrates they did not change the practice in response to this lawsuit. *Id.* The timing instead undermines Defendants' position. Defendants offer only that an unidentified Major discontinued the practice in "early 2025." *Id.* The Court denied Defendants' initial Motion to Dismiss [#25] on September 23, 2024. *Order* [#30]. Plaintiff filed his Amended Complaint on October 24, 2024. *Am. Compl.* [#37]. A decision to alter the challenged conduct shortly after these developments suggests a litigation-driven response rather than an independent policy shift.

Defendants next rely on two declarations to support their assertion that the food services department will not resume strip searches at the end of employee shifts. Shawn Hunter, a CSP Case Manager, states, "[I]t is my understanding that the Food Services Department at CSP no longer conducts routine random strip searches at the end of each shift." *Decl. of Hunter* [#56-1], ¶¶ 1, 11. Tim Dalton, a CSP Captain overseeing the Food and Laundry Services Departments, similarly declares that the food services department no longer conducts strip searches "because the Major in charge of the . . . Department decided, in early 2025, to change the practices to align with other Departments at CSP." *Decl. of Dalton* [#56-2], ¶¶ 1, 7. Dalton further explains that the department now uses

additional security measures to detect theft and that, to his knowledge, supervisors do not plan to reintroduce random strip searches. *Id.* ¶¶ 8, 9.

These declarations do not reflect a formal policy change governing the food services department's use of strip searches as a security measure. *Prison Legal News*, 944 F.3d at 881; *cf. Bahnmiller v. Derwinski*, 923 F.2d 1085, 1089 (4th Cir. 1991) (noting, "Withdrawal or alteration of administrative policies can moot an attack on those policies.") (cited in *Rio Grande Silvery Minnow*, 601 F.3d at 1117). Instead, they describe nothing more than an informal, undocumented decision by an unidentified Major to suspend the practice. The Tenth Circuit has squarely rejected such informal assurances as adequate to overcome the voluntary cessation exception. *Id.* Defendants therefore fail to carry their formidable burden, and the Court concludes that the voluntary cessation exception applies.

## B.      Capable of Repetition and Evading Review

The capable-of-repetition-yet-evading-review exception applies to the defense of mootness when two criteria are met: "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (quotation marks omitted).[4] Courts apply this exception narrowly and "only in exceptional situations." *Marks v. Colo. Dep't of Corr.*, 976 F.3d 1087, 1093 (10th Cir. 2020) (quoting *Jordan v. Sosa*, 654 F.3d

---

[4] Defendants do not dispute the first element. *Reply* [#69] at 8. Because CSP assigns entering inmates to food services and routinely reassigns them when a position opens in another department, Plaintiff satisfies this element. He filed this lawsuit in 2023 while still in food services, and the litigation continues nearly two years after his reassignment.

1012, 1034-35 (10th Cir. 2011)). The party invoking the exception bears the burden of establishing both elements. *Jordan*, 654 F.3d at 1027.

Plaintiff satisfies that burden. Although CSP reassigned him to the housekeeping department, he regularly volunteers to work where needed. *Response* [#63] at 4. More importantly, a Colorado Department of Corrections regulation authorizes prison officials to require all inmates assigned to the Incentive Living Program to perform essential facility-need tasks during a lockdown, including but not limited to food service, laundry, custodial work, and correctional industries. *Id.*; *see also* CDOC Admin. Regul. 650-01(IV)(C)(1)), *available at* https://drive.google.com/file/d/1D0oxZg7CFUexrcHNouG-jLBKbaVVW7Bf/view (last accessed Feb. 4, 2026). The regulation further warns that "[f]ailure to comply with participation in these tasks will result in removal from the Incentive Living Program and review for Code of Penal Discipline . . . charges." *Id.*

Defendants argue that Plaintiff's willingness to volunteer for food services work defeats any claim that the department may resume strip searches. *Reply* [#69] at 8. That argument fails. Volunteering to work "as needed" while strip searches are not currently in effect does nothing to foreclose their reinstatement. Defendants also assert that "there is no substantial likelihood that CSP will resume random strip searches of food service workers." *Id.* The Court has already rejected that assertion, concluding that an informal, undocumented decision to discontinue the practice fails to eliminate a reasonable possibility of recurrence.

Moreover, lockdowns occur with sufficient frequency in detention facilities to make the application of CDOC Admin. Regul. 650-01(IV)(C)(1) a realistic prospect. This regulation creates a reasonable probability, exceeding a merely theoretical risk, that

10

Plaintiff will again be required to work in the food services department. Because Defendants have not shown that the challenged practice cannot reasonably be expected to recur, Plaintiff has established the second prong of the capable-of-repetition-yet-evading-review exception. The exception therefore applies, and Defendants' assertion that Plaintiff's claim is moot fails.

### IV.    Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#56] be **DENIED**.

IT IS FURTHER **ORDERED** that Plaintiff's Request Under F.R.E. for This Court to Take Judicial Notice of Colorado Revised Statutes, Sections 17-103, 17-20-115 & 17-20-117 [#70] is **DENIED as moot**.

IT IS FURTHER **ORDERED** that Plaintiff's Renewed Motion to Set Status/Scheduling Conference [#67] is **DENIED** as **premature**. The Court will set a Scheduling Conference at the appropriate time, if necessary, following the District Judge's adjudication of this Recommendation.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Federal Rule of Civil Procedure 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.,* 73 F.3d

1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: February 6, 2026                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge